Maud Lee THORNBROUGH, Jr.,
Plaintiff-Appellant,

v.

COLUMBUS AND GREENVILLE RAILROAD COMPANY,
Defendant-Appellee.

No. 84–4410.

United States Court of Appeals,
Fifth Circuit.

May 17, 1985.

636

Colom, Mitchell & Colom, Wilbur O. Colom, Columbus, Miss., for plaintiff-appellant.

Threadgill, Smith, Sanders & Jolly, Taylor B. Smith, Columbus, Miss., for defendant-appellee.

Before GOLDBERG, POLITZ, and WILLIAMS, Circuit Judges.

GOLDBERG, Circuit Judge:

Grow old along with me!
The best is yet to be,
The last of life, for which
   the first was made.
—Robert Browning, *Rabbi Ben*
   *Ezra* st. 1 (1864)

For many elder Americans, Browning's verse is a cruel jest rather than a reassuring vision. Not only must they face the inexorable advance of nature—they must face the biases of their fellow man. In 1967, recognizing that one of the tests of a civilized society is its treatment of the elderly, Congress enacted the Age Discrimination in Employment Act ("ADEA"), Pub.L. No. 90–202, 81 Stat. 602 (codified as amended at 29 U.S.C. §§ 621–634 (1982)). The Act has as its purpose the "elimination of discrimination from the workplace," *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978), by making it unlawful for employers to discriminate against persons between the ages of forty and seventy based on their age. 29 U.S.C. §§ 623(a), 631.[1]

In February 1983, Maud Lee Thornbrough brought suit against the Columbus & Greenville Railroad, alleging that he had been dismissed because of his age, in violation of the ADEA. The district court held that Thornbrough had failed to present a prima facie case of age discrimination and granted summary judgment for the Railroad. Because we conclude that Thornbrough raised a genuine issue of material fact, we hold that summary judgment was improperly granted. Accordingly, we reverse the judgment below and remand for further proceedings.

## I. FACTS

At the time of his discharge from the C & G Railroad, Thornbrough was fifty-six years old and held the position of Vice President of Federal Projects. He had worked in the railroad business for approximately thirty-one years—the last five with the C & G Railroad, from 1977 to 1982. During this time, he held a variety of positions, including Assistant Chief Engineer, Vice President-Chief Engineer, Vice President of Transportation, and Vice President of Operations.

The C & G Railroad was established in 1975. From its inception, it was plagued with financial problems. Indeed, between the years 1975 and 1982, the Railroad made a net profit in only one year and accumulated net losses of $1.6 million. Its losses exclusive of real property gains totaled $3.58 million.

In 1982, the Railroad determined that in order to cut these losses, it had to reduce its work force. Between February and November 1982, the Railroad "furloughed" (that is, fired) forty-three employees. Including retirements, the Railroad's work force was reduced by forty-six employees, from 106 to 60. In addition, the Railroad went on a four-day work week, and management deferred payment of approximately ten percent of its own salary.

On June 30, 1982, the Railroad furloughed Thornbrough. Apparently, no one replaced Thornbrough in his position as Vice President of Federal Projects. Instead, his position was eliminated and its duties divided up among the Railroad's Chief Engineer, Accountant, and General Supervisor of Maintenance of Ways and Structures. These individuals were approximately forty-seven, thirty, and fifty-four years old, respectively. The Railroad also retained several other younger employees in positions similar to Thornbrough's and hired two new employees with little railroad experience. The precise ages of these retained and new employees are somewhat unclear. At least one was clearly outside of the protected ADEA class at the time of Thornbrough's furlough,[2] and

---

1. For a general discussion of the background of the ADEA, *see Williams v. General Motors Corp.,* 656 F.2d 120, 126–27 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); Note, *The Age Discrimination in Em-*

*ployment Act of 1967,* 90 Harv.L.Rev. 380 (1976).

2. Roger Bell was in his early thirties in 1982.

several others may also have been outside of the protected class.[3]

Thornbrough brought suit against the Railroad on February 11, 1983, alleging both a violation of the ADEA and breach of contract. In support of the ADEA claim, Thornbrough alleged that he was better qualified than the younger employees whom the Railroad retained and hired, including the three persons who assumed his former duties. According to Thornbrough, the fact that younger, less well-qualified employees were retained and hired in preference to him was evidence that the Railroad had discriminated based on age.

Following limited discovery, the district court granted the Railroad's motion for summary judgment on the ADEA claim on the ground that Thornbrough had failed to establish a prima facie case, and dismissed without prejudice Thornbrough's pendent state claim for breach of contract. Thornbrough now appeals.

## II. ELEMENTS OF A PRIMA FACIE EMPLOYMENT DISCRIMINATION CASE

■ In a disparate treatment suit, the ultimate issue is whether the employer intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715,

103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 564 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). Thus, if a plaintiff is able to offer sufficient direct evidence of intentional discrimination, he obviously should prevail. Usually, however, this is not the case. Unless the employer is a latter-day George Washington, employment discrimination is as difficult to prove as who chopped down the cherry tree. *See* Mendez, *Presumptions of Discriminatory Motive in Title VII Disparate Treatment Cases*, 32 Stan.L.Rev. 1129 (1980). Employers are rarely so cooperative as to include a notation in the personnel file, "fired due to age," or to inform a dismissed employee candidly that he is too old for the job. *See Aikens*, 460 U.S. at 716, 103 S.Ct. at 1482.

■ To ease the evidentiary burdens on employment discrimination plaintiffs, courts have fashioned special rules of proof, in order "progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981).[4] Initially,

---

**3.** Bruce Hanson and Donnie Sellars are now in their early forties, and may have been under forty in 1982.

**4.** These special rules governing the order of proof were first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and were later explicated and refined in *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), *Board of Trustees v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), *Burdine*, 450 U.S. 248, 101 S.Ct. 1089, and *Aikens*, 460 U.S. 711, 103 S.Ct. 1478. Although *McDonnell Douglas* itself was technically a failure to rehire case, not a discharge case, both the Supreme Court and this court have applied the *McDonnell Douglas* rules of proof in discharge cases, *see, e.g., Burdine*, 450 U.S. 248, 101 S.Ct. 1089; *Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir.1977), as well as in other types of disparate treatment cases, *see generally* B. Schlei & P. Grossman, *Employ-*

*ment Discrimination Law* 1153 & nn. 5–12 (1976).

Moreover, although the special rules of proof developed in *McDonnell Douglas* and its progeny arose in the context of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1982), ever since our maiden ADEA case, *Hodgson v. First Federal Savings & Loan Ass'n*, 455 F.2d 818 (5th Cir.1972), we have looked to Title VII decisions to interpret the ADEA. Recently, we adopted in the ADEA context both the *McDonnell Douglas* test of a prima facie case, *Price*, 561 F.2d at 612; *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977), and the accompanying rules regarding the order and burdens of proof, *Reeves v. General Foods Corp.*, 682 F.2d 515, 520–23 (5th Cir. 1982) (establishing a prima facie case may not always satisfy plaintiff's burden of production); *Smith v. Farah Mfg. Co.*, 650 F.2d 64, 67 (5th Cir.1981) (burden of persuasion remains at all times on plaintiff). In this respect, we agree with most other circuits that have considered the question. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014–16 (1st Cir.1979); *Duffy v. Wheeling*

a plaintiff can create a rebuttable presumption of intentional discrimination by establishing a "prima facie case." *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Generally, to establish a prima facie case, a plaintiff need only make a very minimal showing. He can meet his initial burden by showing merely that he was within the protected class, that he was qualified for the job in question, and that employees outside of the protected class were more favorably treated—for example, by being hired to a job for which the plaintiff was turned down or by replacing the plaintiff in the job from which the plaintiff was discharged. *See, e.g., McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Price*, 561 F.2d at 612.

Once an employee has established a prima facie case, the burden of production shifts to the employer. In order to rebut the presumption of intentional discrimination, the employer must articulate "some legitimate, nondiscriminatory reason" why the plaintiff was rejected or someone else was preferred; otherwise, the factfinder is required to find for the plaintiff. *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.[5]

By articulating legitimate reasons for his decision, the employer rebuts the initial presumption of intentional discrimination created by the plaintiff's prima facie case. The burden of production therefore shifts back to the plaintiff, albeit at "a new level of specificity," to prove that the reasons articulated by the employer are not true reasons but only pretexts. *Aikens*, 460 U.S. at 714–15, 103 S.Ct. at 1481–82 (*quoting Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095); *see also McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. at 1824–26.[6] The plaintiff can do this in two ways, "either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *see also Bohrer v. Hanes Corp.*, 715 F.2d 213, 218 (5th Cir.1983), *cert. denied*, ‒‒ U.S. ‒‒, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). The first of these alternatives is the alternative that is always open to the plaintiff in an employment discrimination case: producing "evidence from which a trier of fact might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Elliott*, 714 F.2d at 562. The second, however, depends upon the resurrection of the presumption initially created by the plaintiff's prima facie case. By disproving the reasons offered by the employer to rebut the plaintiff's prima fa-

*Pittsburgh Steel Corp.*, 738 F.2d 1393, 1396 (3rd Cir.), *cert. denied*, ‒‒ U.S. ‒‒, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984); *Douglas v. Anderson*, 656 F.2d 528, 531–32 (9th Cir.1981); *Schwager v. Sun Oil Co.*, 591 F.2d 58, 60–61 (10th Cir.1979). *But see Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 (6th Cir.1975). Thus, even though the present case is an ADEA rather than a Title VII case, the rules of proof developed in *McDonnell Douglas* and its progeny are controlling.

5. Since this is a summary judgment case, we only note in passing that the presumption created by the plaintiff's prima facie case shifts merely the burden of production, not the burden of persuasion. *Burdine*, 450 U.S. at 253–56, 101 S.Ct. at 1093–95; *Sweeney*, 439 U.S. at 24, 25, 99 S.Ct. at 295; *Furnco*, 438 U.S. at 577–78, 98 S.Ct. at 2950; *see* Fed.R.Evid. 301 ("[A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption,

but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."). Thus, even after the plaintiff has established a prima facie case, the employer need not *prove* that he was motivated by legitimate, nondiscriminatory reasons; he must only "articulate" such reasons. *Burdine*, 450 U.S. at 257–58, 101 S.Ct. at 1096. Once the employer has articulated reasons for his decision, it is the plaintiff's burden to prove that these reasons are pretexts.

6. Because it is relatively easy both for a plaintiff to establish a prima facie case and for a defendant to articulate legitimate, nondiscriminatory reasons for his decision, most disparate treatment cases are resolved at the third stage of the inquiry, on the issue of whether the defendant's reasons are pretextual. *See* B. Schlei & P. Grossman, *supra* note 4, at 1156.

cie case, the plaintiff recreates the situation that obtained when the prima facie case was initially established: in the absence of any known reasons for the employer's decision, we presume that the employer was motivated by discriminatory reasons. As the Court explained in *Furnco,*

> [W]e are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race.

438 U.S. at 577, 98 S.Ct. at 2950. Thus, in our view, unlike Humpty-Dumpty, the employee's prima facie case can be put back together again, through proof that the employer's proffered reasons are pretextual. *See Aikens,* 460 U.S. at 718, 103 S.Ct. at 1483 (Blackmun, J., concurring); *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1396 (3rd Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).[7]

### III. STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(c), summary judgment is proper only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." In reviewing a motion for summary judgment, "the court must indulge every reasonable inference from [the underlying] facts in favor of the party opposing the motion." *Powers v. Nassau Development Corp.,* 753 F.2d 457, 462 (5th Cir.1985) (*quoting A.T. & T. Co. v. Delta Communications Corp.,* 590 F.2d 100, 101–02 (5th Cir.), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979)); *see also United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Simmons v. McGuffey Nursing Home,* 619 F.2d 369, 371 (5th Cir.1980). The party who defended against the motion for summary judgment must have his allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. *E.C. Ernst, Inc. v. General Motors Corp.,* 537 F.2d 105, 108 (5th Cir.1976). *See generally* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* §§ 2716, 2725 (2d ed. 1983).

In general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent. *See Hayden v. First National Bank,* 595 F.2d 994, 997 (5th Cir.1979) ("When dealing with employment discrimination cases, ... granting of summary judgment is especially questionable.");

---

7. *Reeves v. General Foods Corp.,* 682 F.2d 515 (5th Cir.1982), is not controlling, since its analysis of the *McDonnell Douglas* framework was superseded by that of the Supreme Court in *Aikens. Reeves* held that an employer's articulation of nondiscriminatory reasons permanently dissolves the presumption created by the employee's prima facie case. In order to prevail under *Reeves,* an employee not only had to rebut the employer's proffered reasons by proving that they were pretexts; he also had to "introduce substantial evidence to show that ... he had been discriminated against *because of age." Reeves,* 682 F.2d at 523. *Aikens,* however, took a different view of the employee's burden after the employer has articulated nondiscriminatory reasons. In *Aikens,* the Court reversed the lower court for requiring the employee to submit direct affirmative evidence of discriminatory intent. 460 U.S. at 714 n. 3, 717, 103 S.Ct. at 1481 n. 3, 1483. In a concurrence, Justice Blackmun explained that the Court's holding was based on the principle that "the *McDonnell Douglas* framework requires that a plaintiff prevail when at the third stage of a Title VII trial he demonstrates that the legitimate, nondiscriminatory reason given by the employer is in fact not the true reason for the employment decision." *Id.* at 718, 103 S.Ct. at 1483. Since *Aikens,* we have adopted a similar view. *See Sylvester v. Callon Energy Serv.,* 724 F.2d 1210, 1213 (5th Cir.1984) ("To prevail ..., [plaintiff] was required only to prove that the reasons preferred by the company to justify the discharge were pretexts."); *cf. Elliott,* 714 F.2d at 566 (evidence of discrimination "may take the form of an attempted showing that the reason given by the employer, though facially adequate, was untrue as a matter of fact").

*EEOC v. Southwest Texas Methodist Hospital,* 606 F.2d 63, 65 (5th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 761 (1980). Often, motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder. In reviewing a case on appeal, it is difficult to determine what evidence might legitimately sway the factfinder and hence be material. Thus, if any facts are in dispute, summary judgment is generally inappropriate. *Cf. Transource International, Inc. v. Trinity Industries,* 725 F.2d 274 (5th Cir.1984) (summary judgment generally inappropriate in antitrust suits).

## IV. VALIDITY OF SUMMARY JUDGMENT

■ The district court granted summary judgment on the ground that Thornbrough failed to present a prima facie case

of employment discrimination.[8] In reviewing this holding, we must consider two questions: (1) Did Thornbrough present a genuine issue of fact as to the existence of a prima facie case, and (2) if so, did he present a genuine issue of fact as to whether the reasons articulated by the Railroad for discharging him were pretextual? We hold that Thornbrough presented genuine issues of fact regarding both issues.[9]

### A. Prima Facie Case

■ The necessary elements of a prima facie employment discrimination case are not Platonic forms, pure and unchanging; rather, they vary depending on the facts of a particular case. In *McDonnell Douglas,* when the Supreme Court first articulated the elements of a prima facie case, it recognized that "specification ... of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.[10] As we

---

8. Although the district court speaks of Thornbrough not having met his "burden" of "presenting" a prima facie case, we assume that the district court meant that Thornbrough did not raise a genuine issue of material fact as to the existence of a prima facie case. To make out a prima facie case, the plaintiff must prove the necessary elements "by a preponderance of the evidence." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094. Even if the plaintiff has not succeeded in meeting this burden of proof, if he has raised a genuine issue of material fact, he should survive summary judgment. Fed.R.Civ.P. 56(c); *accord Locke v. Commercial Union Ins.,* 676 F.2d 205, 208 (6th Cir.1982) (Jones, J., dissenting) ("It is th[e] existence of a genuine issue of fact, not the existence or nonexistence of a prima facie case, which makes the instant grant of summary judgment improper.").

9. Because we hold that the plaintiff offered sufficient evidence to establish a prima facie case, we only consider in passing whether failure to establish a prima facie case would warrant summary judgment. We do note, however, that where, as here, "prima facie case" refers to evidence that creates a legally mandatory, rebuttable presumption that the proposing party should prevail, rather than to evidence that meets a party's burden of production, *Burdine,* 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7; *see* 9 *Wigmore on Evidence* §§ 2487, 2494 (J. Chadbourn rev. ed. 1981), there is no inherent rela-

tion between the failure to establish a prima facie case and summary judgment. The failure to establish a prima facie case means merely that the plaintiff has failed to establish facts sufficient to create a legally mandatory, rebuttable presumption. It means that the factfinder is not *required* to find in the plaintiff's favor; it does not mean that the factfinder is not *permitted* to find in the plaintiff's favor. A fact may be material for purposes of defeating a motion for summary judgment and yet fail to create a rebuttable presumption. *But cf. Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1391 (11th Cir.) ("[F]ailure to establish a prima facie case warrants summary judgment."), *cert. denied,* —— U.S. ——, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).

Thus, to the extent that the failure to establish a prima facie case warrants summary judgment, this is due not to the logical relation between the doctrines of prima facie case and summary judgment, but to the particular elements of a prima facie *employment discrimination* case. In the employment discrimination context, a prima facie case is established if the plaintiff merely satisfies the standing requirements of the ADEA and presents evidence of differential treatment of younger and older employees. Given these minimal requirements, the failure to establish a prima facie case generally means that there are no material facts at issue.

10. *See also Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949 (The *McDonnell Douglas* test "was never

later stated, since discrimination exists "in forms as myriad as the creative perverseness of human beings can provide," *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 753–54 (5th Cir.1980), certain specific elements do not constitute "the alpha and omega" of a prima facie ADEA case, *id.* at 753.

In *Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982), we modified the *McDonnell Douglas* test in the context of cases that, like the present one, involve a general reduction in an employer's workforce. As we noted, "Reduction-in-force cases are obviously outside the embrace of [*McDonnell Douglas* ] since reduction-case plaintiffs are simply laid off and thus incapable of proving the third [*McDonnell Douglas* ] element, *i.e.*, actual *replacement* by a younger employee." *Id.* at 128. We therefore elaborated a different standard for reduction-in-force cases, under which a plaintiff must (1) satisfy the standing requirements of the statute by showing that he is within the protected group and that he has been adversely affected—*e.g.*, discharged or demoted—by the employer's decisions; (2) show that he was qualified to assume another position at the time of the discharge or demotion; and (3) produce "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Id.* at 129.

The principal novelty of the *Williams* test is its third requirement. At first glance, this requirement may seem to represent a considerable heightening of the proof required for a prima facie case. In a non-reduction-in-force suit, the plaintiff must make only a very minimal showing to establish this aspect of his prima facie case: [11] He must simply show that he was discharged from a position for which he was qualified, and that he was replaced by someone outside of the protected class. *Price v. Maryland Casualty Co.*, 561 F.2d 609, 612 (5th Cir.1977).[12] He need not introduce any evidence, either direct or circumstantial, that the employer in fact engaged in intentional discrimination; instead, discrimination is presumed from his replacement. By contrast, under the *Williams* version of a prima facie case, the plaintiff must "produce some evidence that an employer has not treated age neutrally, but has instead discriminated based upon it. Specifically, the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining or relocating a plaintiff because of his age, or (2) that defendant regarded age as a negative factor in such consideration." 656 F.2d at 129–30.

*Williams*, however, does not answer the crucial question: What quantum of evidence might lead the factfinder reasonably to conclude that the defendant has not treated age neutrally? Or, put differently, what quantum of evidence is sufficient to create a presumption of intentional discrimination? By failing to specify what evidence is and is not sufficient, it is ambiguous whether *Williams* represents a stricter or merely a more flexible standard for a prima facie case. An argument could be made that *Williams* eased rather than heightened the burden on employment discrimination plaintiffs by eliminating the ne-

intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination."); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735 (5th Cir.1977) ("*McDonnell Douglas* [did] not establish an immutable definition of a prima facie case.").

**11.** *See Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 562 (5th Cir.1983) (the elements of a prima facie case "come to little more than establishing the standing requirements of the

ADEA and blunting the defendant's probable rejoinder that the plaintiff has not been discriminated against"), *cert. denied,* —— U.S. ——, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

**12.** In certain instances, we have relaxed this test even further. For example, in *Wilson v. Sealtest Foods Div. of Kraftco Corp.*, 501 F.2d 84 (5th Cir.1974), we reversed a directed verdict in favor of the employer, even though the plaintiff was replaced simply by a younger person, not by a person outside of the protected class. *See infra* note 14.

cessity of showing actual replacement by a younger worker; instead, *Williams* allows employees to establish a prima facie case through any type of circumstantial evidence that younger employees were more favorably treated than older employees.

In examining whether Thornbrough alleged a prima facie case, we note at the outset what Thornbrough did not attempt to prove. He did not attempt to prove that the Railroad's officers made any remarks indicating that age was a factor in their employment decisions. In his deposition, he admitted that no one ever told him that he was too old for the job. Thornbrough Deposition at 50. He did not introduce any statistical evidence that the Railroad tended to disfavor older employees. Indeed, what little statistical evidence there was indicated the reverse: The overall effect of the Railroad's lay-offs was to increase the average age of its work-force from thirty-six to thirty-nine. Record at 22. Finally, Thornbrough did not present much, if any, evidence that the Railroad's general employment practices tended to discriminate against older employees.[13]

Instead, the only evidence offered by Thornbrough in support of his claim of age discrimination was that several younger, allegedly less well-qualified employees were retained during the Railroad's reduction-in-force, and that, at the time of his discharge, two younger, allegedly less well-qualified employees were hired. Record at 4, 31–33; Thornbrough Deposition at 48–49.[14] In our view, these allegations, limited though they are, are sufficient to support a prima facie case.[15] They

---

**13.** Thornbrough does seem to have alleged that the Railroad fired him in part because he received a higher salary than that of the younger employees who were retained. Because we hold that Thornbrough's other allegations are sufficient to forestall summary judgment, we express no opinion about whether Thornbrough raised a genuine issue of fact either as to whether the Railroad based its employment decisions on the relative salaries of different employees, or as to whether, if so, this had a disparate impact and hence violated the ADEA. *Cf. Geller v. Markham*, 635 F.2d 1027, 1032–34 (2d Cir. 1980) (basing hiring decisions on relative starting salaries may have disparate impact), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). *See generally Connecticut v. Teal*, 457 U.S. 440, 446–47, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982) (elements of disparate impact case).

**14.** Although Thornbrough compared his treatment not merely to employees outside of the protected ADEA class, but also to employees within the protected class, this is not decisive. We have never demanded rigid adherence to the requirement that the plaintiff establish that he was treated unfavorably as compared with people outside of the protected class—*i.e.*, under age forty. For example, in *Wilson v. Sealtest Foods Div. of Kraftco Corp.*, 501 F.2d 84 (5th Cir.1974), we reversed a directed verdict in favor of the employer, even though the plaintiff was replaced simply by someone younger, not by someone outside of the protected ADEA class. *Id.* at 86. As we noted in *McCorstin v. United States Steel Corp.*, 621 F.2d 749 (5th Cir.1980),

[B]ecause the discrimination involves age, rather than sex or race, a requirement that the replacement be from a nonprotected group fails to take the reality of the working place into account. Because of the value of experience rarely are sixty-year-olds replaced by those under forty. The replacement process is more subtle but just as injurious to the worker who has been discharged. That the person is replaced by a person ten years younger rather than twenty years does not diminish the discrimination; the subtlety only tends to disguise it.

*Id.* at 754; *see also McCuen v. Home Ins. Co.*, 633 F.2d 1150, 1151–52 (5th Cir.1981) (summary judgment reversed even though the younger employees who were retained were over forty years of age). Moreover, in the present case, although several of the retained or new employees with whom Thornbrough compares his treatment may have been within the protected class, at least two clearly were not: the Railroad's Accountant, who was approximately thirty years old in 1982, and the newly-promoted Vice President of Transportation, who was in his early thirties.

**15.** In regard to the other requirements of a prima facie case, the Railroad does not appear to dispute that Thornbrough was within the protected age group and was adversely affected by the Railroad's decision to fire him. Moreover, for the purposes of reviewing the grant of summary judgment, we assume that Thornbrough was qualified for the positions occupied by the retained and new employees, since there are facts in the record to support this conclusion.

exude that faint aroma of impropriety that is sufficient to justify requiring the Railroad to give reasons for its decision.[16]

█ A prima facie case "raises an inference of discrimination only because we presume [the employer's] acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco*, 438 U.S. at 577, 98 S.Ct. at 2949–50. In a reduction-in-force case, what creates the presumption of discrimination is not the discharge itself, but rather the discharge coupled with the retention of younger employees. Unlike in an ordinary discharge case, where the mere discharge creates a presumption of discrimination because we assume that an employer does not fire a qualified employee, in a reduction-in-force case, discharges are readily explicable in terms of the employer's economic problems. Consequently, the fact that qualified, older employees are laid off is not inherently suspicious and does not in itself warrant shifting the burden of production to the employer to justify his actions. *Cf. Matthews v. Allis-Chalmers Corp.*, 35 Fair Empl.Prac.Cas. (BNA) 1404, 1405 (N.D.Ill.1984).

Instead, what is suspicious in reduction-in-force cases is that the employer fired a qualified, older employee but retained younger ones. If we focus not on why employees, in general, were discharged, as the district court did, but instead on why the plaintiff rather than another employee was discharged, the discharge of an older employee rather than a younger one is initially unexplained. Under these circumstances, requiring the employer to articulate reasons for his decision to fire the plaintiff is appropriate. It serves the primary function of the prima facie case doctrine: "to sharpen the inquiry into the elu-

sive factual question of intentional discrimination." *Burdine*, 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8.

We note that this conclusion is consistent with the approach taken by several other circuit courts. In *Coburn v. Pan American World Airways*, 711 F.2d 339 (D.C. Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983), for example, the District of Columbia Circuit held that in a reduction-in-force suit, an employee can establish a prima facie case merely by proving that, while he was fired from a job for which he was qualified, "younger persons were retained and others later promoted." *Id.* at 343. In support of this conclusion, the court stated, "We believe the exigencies of a reduction-in-force can best be analyzed at the stage where the employer puts on evidence of a nondiscriminatory reason for the firing." *Id.* Similarly, in *Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983), the Third Circuit stated that "a plaintiff alleging a discriminatory layoff need show only that he is a member of the protected class and that he was laid off from a job for which he was qualified while others not in the protected class were treated more favorably." *Id.* at 118. The court held that the plaintiff had established a prima facie case by proving that while he was laid off, a younger person outside of the protected class was retained. *Id.; see also Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1395 n. 2 (3rd Cir.) (plaintiff "established a prima facie case by proof that he was discharged while ... a younger employee was retained"), *cert. denied*, — U.S. —, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984). Finally, the Fourth Circuit held in *EEOC v. Western Electric Co.*, 713 F.2d 1011 (4th Cir.

---

**16.** The only other ground given by Thornbrough for his claim of age discrimination was that he could think of no other reason why he was fired. Thornbrough Deposition at 48. This argument need not detain us. On previous occasions, we have held that similar arguments are insufficient to support a claim of age discrimination. *See Elliott*, 714 F.2d at 564, 566–67; *Simmons v. McGuffey Nursing Home*, 619 F.2d 369, 371 (5th Cir.1980). In effect, Thornbrough is asking the Railroad to justify its decision. Under the *McDonnell Douglas—Williams* test,

however, the employer is not required to articulate legitimate, nondiscriminatory reasons for its employment decision until after the employee has established a prima facie case. By itself, Thornbrough's subjective and conclusory allegation that he was the victim of age discrimination is insufficient to establish a prima facie case. *See Elliott*, 714 F.2d at 567 ("We are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief.").

1983), that an employee can demonstrate unequal treatment by proving that he was demoted and a younger person in the same position was retained. *Id.* at 1015.[17]

██ The conclusion that we reach is also supported by our approach in non-reduction-in-force cases. Although we require more than a conclusory allegation of age discrimination to establish a prima facie case, *see EEOC v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir.1984); *cf. Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1218 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981), we do not require much more. Generally, we demand only that a plaintiff present some evidence of differential treatment between older and younger employees. If a younger employee was promoted, but an older employee in a similar position was not, or if a younger employee was hired in preference to an older one, this creates a presumption of discrimination.[18] We do not require the plaintiff initially to provide any additional evidence of discrimination. Nor is the fact that the employer cannot promote every employee, or that he cannot hire every applicant, decisive. Instead, we are concerned with why the younger employee was promoted, or the younger applicant hired, rather than the older one. Similarly, in reduction-in-force cases, the fact that the employer cannot retain every employee is not conclusive. The question is why, given the employer's need to reduce his workforce, he chose to discharge the older rather than the younger employee. By shifting the burden of production to the employer, this is the question that we hope to answer.[19]

### B. Pretext

██ Although we reject the district court's holding that the plaintiff failed to allege sufficient facts to establish a prima

---

**17.** Although the Sixth Circuit held to the contrary in *Sahadi v. Reynolds Chem. Corp.,* 636 F.2d 1116, 1118 (6th Cir.1980), that case is inapplicable here since the Sixth Circuit, unlike this court, has declined to extend the *McDonnell Douglas* test to ADEA suits. *See Laugesen v. Anaconda Co.,* 510 F.2d 307 (6th Cir.1975).

**18.** *See Exxon Shipping,* 745 F.2d at 972 n. 3 (prima facie case established by evidence that plaintiff not promoted to position for which she was qualified, while person outside of protected class was promoted); *Page v. U.S. Indus.,* 726 F.2d 1038, 1055 (5th Cir.1984) (same); *Martinez v. El Paso County,* 710 F.2d 1102, 1104 (5th Cir.1983) (plaintiff established prima facie case by showing that he was discharged from job for which he was qualified, while person with comparable or lesser qualifications was retained); *Causey v. Ford Motor Co.,* 516 F.2d 416, 422–23 (5th Cir.1975) (prima facie case established by evidence that male applicants hired to job for which plaintiff applied and was qualified).

**19.** In holding that the plaintiff has met his burden of establishing a prima facie case, and that therefore summary judgment was improperly granted, we do not mean to belittle the salutary function of summary judgment in the employment discrimination arena: summary judgment allows patently meritless cases to be nipped in the bud, before valuable judicial resources are expended. Where there is only an "attenuated possibility that a jury would infer a discriminatory motive," *Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1391 (11th Cir.), *cert. denied,* — U.S. —,

104 S.Ct. 549, 78 L.Ed.2d 724 (1983), proceeding with a case serves no useful function. The problem, however, is that there is no bright line demarcating when a "genuine issue of fact" degenerates into an "attenuated possibility." Consequently, our cases display no clear pattern. *Compare McCuen v. Home Ins. Co.,* 633 F.2d 1150 (5th Cir.1981) (summary judgment reversed, where plaintiff alleged only that while he was laid off, several younger employees were retained, and where employer had articulated legitimate, nondiscriminatory reasons for its actions) *and Wilson v. Sealtest Foods Div. of Kraftco Corp.,* 501 F.2d 84 (5th Cir.1974) (directed verdict in favor of employer reversed where plaintiff alleged simply that he was forced to retire from job for which he was qualified, and that younger employee who was retained replaced him) *with Stendebach v. CPC Int'l, Inc.,* 691 F.2d 735, 738 (5th Cir.1982) (directed verdict affirmed on ground that employee's evidence was, "at best, a mere scintilla which is insufficient to present a jury question"), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983) *and Baldwin v. Sears, Roebuck & Co.,* 667 F.2d 458 (5th Cir.1982) (summary judgment affirmed in reduction-in-force case on ground that employee presented no statistical or direct evidence of intentional discrimination) *and Williams,* 656 F.2d at 130 (finding of intentional discrimination reversed on ground that plaintiff failed to establish a prima facie case). In the present case, although the plaintiff's odds of prevailing may not be high, we are not prepared to say that they are so minute that proceeding with the case would be pointless.

facie case, the Railroad urges that summary judgment is nevertheless warranted. A prima facie case raises only a *rebuttable* presumption of discrimination. If the employer articulates legitimate, nondiscriminatory reasons for his actions, the presumption created by the plaintiff's prima facie case dissolves and the burden reverts to the plaintiff to prove that the employer's reasons are pretextual. *Burdine,* 450 U.S. at 253–55, 101 S.Ct. at 1093–94. According to the Railroad, Thornbrough failed to meet this burden because he was unable to rebut the Railroad's articulated reasons for furloughing Thornbrough rather than another employee. The Railroad claims, therefore, that summary judgment was justified.[20]

■■■■ We disagree. In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext. Here, Thornbrough did so. Although the Railroad offered a number of reasons for its decision to fire Thornbrough, Thornbrough questioned the objec-

tive truth of each of them.[21] The Railroad claimed that Thornbrough was a less effective worker than the other employees in question—that he was not a "self-starter"; in response, Thornbrough argued that he was an experienced and effective worker, and that several of the employees retained or hired by the Railroad were extremely inexperienced. Record at 31–33; Thornbrough Deposition at 47–49. The Railroad claimed that Thornbrough was unqualified for several of the positions held by the employees who were retained (for example, the accountant's position and the position of securing industrial development prospects and business); Thornbrough claimed that, with his experience in the railroad industry, he could have filled virtually any position in the Railroad. Record at 33; Thornbrough Deposition at 47. The Railroad claimed that Thornbrough's position was not full-time and was more easily divisible than those of the other employees; Thornbrough responded that his job was full-time. Record at 31.[22]

■■■■ These disputed factual issues are clearly material. Although the Railroad

---

**20.** The Railroad also cites undisputed statistical evidence indicating that it did not engage in age discrimination. This evidence shows that, as a result of the Railroad's reduction in force, the average age of its employees increased. While this evidence is probative of the age discrimination issue, it is not dispositive. The issue in this case is whether the Railroad discriminated against Thornbrough, not whether it discriminated against other older employees. "It is clear that Congress never intended to give an employer license to discriminate against some employees ... merely because he favorably treats other members of the employees' group.... [I]rrespective of the form taken by the discriminatory practice, an employer's treatment of other members of the plaintiffs' group can be 'of little comfort to the victims of ... discrimination.'" *Connecticut v. Teal,* 457 U.S. 440, 455, 102 S.Ct. 2525, 2535, 73 L.Ed.2d 130 (1982) (*quoting International Bhd. of Teamsters v. United States,* 431 U.S. 324, 342, 97 S.Ct. 1843, 1858, 52 L.Ed.2d 396 (1977)); *cf. Cooper v. Federal Reserve Bank,* — U.S. —, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (adverse judgment in class action suit not res judicata in subsequent suit by individuals, since employer may have committed individual acts of discrimination without engaging in general pattern of discrimination). As the Court put it in *Cooper,* "a piece of fruit may well be bruised without being rot-

ten to the core." — U.S. at —, 104 S.Ct. at 2802. Moreover, the fact that the Railroad retained many older employees does not prove that the Railroad did not regard age as a negative factor; perhaps these older employees were so far superior to their younger colleagues that, even though their age was regarded as a disadvantage, the Railroad did not want to discharge them. Thus, the Railroad's statistical evidence does not warrant summary judgment. Instead, it should be weighed by the factfinder along with the other evidence presented by the parties.

**21.** The present case thus differs from *Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 566 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984), where no issue of pretext was raised.

**22.** Despite the sparseness of proof in favor of Thornbrough, we are unwilling to say that the disputes raised by Thornbrough are not genuine. Here we are not faced merely with the conclusory allegation of Thornbrough that he was well qualified for his job. *Cf. EEOC v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir. 1984) ("[P]retext cannot be established by mere 'conclusory statements' of a plaintiff who feels he has been discriminated against."). Instead, according to Thornbrough's counsel, if Thornbrough's presentation of proof had not been ab-

makes much of Thornbrough's lack of affirmative proof of discrimination, Thornbrough is not required to prove that the Railroad was motivated by bad reasons; he need only persuade the factfinder that the Railroad's purported good reasons were untrue. *See Sylvester v. Callon Energy Serv.*, 724 F.2d 1210, 1213 (5th Cir.1984). While Thornbrough's case would be considerably stronger if he could point to a smoking personnel file, if he can undermine the Railroad's articulated reasons, the factfinder would be entitled to conclude that the Railroad engaged in intentional discrimination.[23]

■ Of course, the issue in this case is not whether Thornbrough or the retained employees were better qualified. The Railroad is entitled to make that decision for itself. The ADEA was not intended to be a vehicle for judicial second-guessing of business decisions, nor was it intended to transform the courts into personnel managers. *See Elliott*, 714 F.2d at 567. However, if the factfinder determines that Thornbrough was clearly better qualified than the employees who were retained, it is entitled to conclude that the Railroad's articulated reasons are pretexts.[24] Everyone can make a mistake—but if the mistake is large enough, we may begin to wonder whether it was a mistake at all.

## V. CONCLUSION

In *Williams v. General Motors*, we enunciated the general principle that the

ruptly terminated by the summary judgment, Thornbrough was prepared to present witnesses who would have testified as to his qualifications and abilities. Moreover, if the case had continued, Thornbrough could have cross-examined the retained and new employees about their qualifications. Through this comparison of his qualifications with those of his "competitors," Thornbrough may have been able to persuade the factfinder that he was the clearly superior employee. *Cf. Causey v. Ford Motor Co.*, 516 F.2d 416, 423 (5th Cir.1975) (where employer alleges that he hired one employee rather than another because, in his subjective view, the chosen employee was better qualified, court should scrutinize this explanation very carefully); *Pond v. Braniff Airways, Inc.*, 500 F.2d 161, 166 (5th Cir.1974) (same).

ADEA "does not place an affirmative duty upon an employer to accord special treatment to members of the protected age group;" it only "mandates that an employer reach employment decisions without regard to age." 656 F.2d at 129. We recognize that this decision stretches this principle to its limit. By allowing an employee to bring suit merely because an employer fires him rather than a younger, allegedly less well-qualified employee, we may, to some degree, induce employers to lay off younger employees instead of older ones.

However, we are unwilling to embrace the alternative. We are unwilling to hold that even if an older employee can prove that he was clearly better qualified than younger employees who were kept on, he is precluded as a matter of law from bringing an age discrimination suit. Such a ruling would go far toward shielding a clever employer from the reach of the ADEA. Given the difficulties of demonstrating age discrimination, we believe that the better course is to allow the factfinder to determine whether the plaintiff's evidence justifies an inference of age discrimination.

In *Simmons v. McGuffey Nursing Home*, 619 F.2d 369 (5th Cir.1980), we upheld a grant of summary judgment, noting, "The possibility of a jury drawing a contrary inference sufficient to create a dispute as to a material fact does not reify to the point even of a thin vapor capable of being seen or realized by a reasonable

---

**23.** *See, e.g., Exxon Shipping*, 745 F.2d at 974–77 (affirmed finding of pretext where plaintiff was denied promotion even though clearly less-qualified person was promoted); *Martinez v. El Paso County*, 710 F.2d 1102, 1104–05 (5th Cir.1983) (affirmed finding of pretext based on testimonial evidence that discharged employee was clearly better qualified than retained employee).

**24.** *Cf. Burdine*, 450 U.S. at 259, 101 S.Ct. at 1097 ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this [evidence] may be probative of whether the employer's reasons are pretexts for discrimination.").

jury." *Id.* at 371. Here, through the dim mists, we perceive a thin vapor. Whether it will precipitate into a victorious shower is a question for the jury. It should not have been dispersed by means of summary judgment.

REVERSED AND REMANDED.