$7,449,504 in punitive damages against Waffle House.

SHORE EXPLORATION AND
PRODUCTION CORP.,
Plaintiff,

v.

EXXON CORP., Texaco, Inc., and
Eastern Exploration, Inc.,
Defendants.

No. CA 3–95–CV–1228–R.

United States District Court,
N.D. Texas,
Dallas Division.

June 30, 1997.

See also 976 F.Supp. 514.

Robert J. Clary, Jamie King Harrison, Owens Clary & Aiken, Dallas, TX, for Shore Exploration and Production Corp.

Jay Scott Carothers, Exxon Corp., Houston, TX, for Exxon Corp.

William T. Hankinson, Jane Politz Brandt, Anna E. Marple, Thompson & Knight, Dallas, TX, Jeffrey K. Smith, Texaco Inc., New Orleans, LA, for Texaco Inc.

Michael Theodore Trefny, Stanley J. Krist & Associates, Houston, TX, Joel Howard Muscat, Stafford, TX, for Eastern Exploration Inc.

## MEMORANDUM OPINION AND ORDER

BUCHMEYER, Chief Judge.

Now before this Court is Plaintiff Shore's Motion for Partial Summary Judgment. For the reasons stated below, Plaintiff's Motion is **DENIED.**

## BACKGROUND FACTS

This is a dispute about leasehold interests lost. In simple terms, Shore assigned oil and gas leasehold interests to the Defendants in which it retained a royalty interest. These leases were lost when the lease holders failed to pay the delay rentals.[1] Shore claims that had it received notice that the delay rentals would not be paid on the leased property, it could have exercised its rights to pay the delay rentals itself and to take reassignment of the leases.

In the 1980's, Shore acquired working interests in numerous oil and gas leases in Virginia's Taylorsville Basin. The leases were located in Caroline, King and Queen, and Essex counties. Between 1983 and 1990, Shore agreed to assign interests in those leases and later-acquired leases to three parties: Exxon, Eastern, and Texaco.

### The Model Leases

In this motion for partial summary judgment, Shore seeks to hold Exxon liable for only three of these lost leases, termed by the parties as the "Model Leases." The Model Leases are, on three parcels of property, located in the Taylorsville Basin in Essex and in Caroline Counties, Virginia, one owned by Woodford Broaddus, the second by Joseph D. Barlow, Jr., and the third by Agnes D. Andrews (collectively, the "lessors"). It is disputed whether the lessors ever entered into an agreement with Shore, granting Shore a lease in these properties. Shore contends that it originally entered into the leases with Broaddus, Barlow, and Andrews [2] and that a subsequent agreement between the lessors and Exxon were merely renewals or top leases. Shore's motion for summary

judgment is based on its belief that it received an overriding royalty interest in these leases under the Exxon Agreement. The Exxon Agreement provided that Shore would assign its leases in the Taylorsville Basin (which Shore contends includes the Model Leases) to Exxon and retain an overriding royalty interest. Exxon, however, maintains that the Broaddus, Andrews, and Barlow leases were acquired by Exxon, as lessee, directly from Broaddus, Andrews and Barlow, respectively, as lessors, five years *after* the Exxon Agreement's execution. Shore then acquired its overriding royalty interest in these leases, not by reservation pursuant to the Exxon Agreement, but by direct assignment from Texaco after Exxon had withdrawn from the Taylorsville Basin and assigned all of its leasehold interests to Texaco, including the Broaddus, Andrews, and Barlow leases.

### Exxon Leases

In December 1984 Shore assigned to Exxon its leases, located within Caroline, Essex, and King and Queen counties, subject to Shore's reservation of a ten-year overriding royalty pursuant to the "Exxon Agreement." [3] The Agreement provided that: "all rights and obligations between Shore and Exxon concerning any lease, present or future, within the former Area of Mutual Interest or any overriding royalty payable to Shore shall be governed solely by the terms and conditions of this agreement." [4]

The Exxon Agreement provided that Exxon would pay delay rentals or, in the alternative, it would notify Shore of its intent not to do so, thereby giving Shore the opportunity to pay the rental. This agreement did not contain an exculpatory clause limiting Exx-

---

1. In the oil and gas industry, it is standard practice for the lessor of an oil and gas lease to include a provision for payment of "delay rentals" in the lease. The provision typically recites that the lessee will either commence development of the leasehold by a certain date or pay some fixed annual amount to the lessor to maintain the lease in effect. In most instances, if the lessee fails to make timely payment of the delay rental, the lease terminates automatically. The purpose of the clause is to provide the lessor with some assurance that it will receive income off the property even if the property is not being developed.

Williams and Meyers, OIL AND GAS LAW, § 403, et seq. (Matthew Bender 1995).

2. These leases were not offered as evidence and thus are not part of the summary judgment record.

3. As noted above, whether or not the Model Leases were in fact held by Shore at the time—making them a subset of the Exxon Leases—is disputed.

4. The former AMI refers to the counties of King and Queen, Caroline, Hanover, King William, Westmoreland and Essex Counties, Virginia.

on's liability to gross negligence or willful misconduct.

In April 1985, Exxon transferred a 50 percent interest in the Exxon Leases to Texaco under a Texaco/Exxon joint venture. Then, in February 1990, Texaco acquired all of Exxon's right, title and interest in the Exxon Leases. The Exxon Leases remained subject to the Exxon Agreement and its general notice provision.

On January 1, 1993, the Exxon Leases were re-leased to Eastern.

### Exxon/Texaco Relationship

On February 6, 1990, Exxon informed Texaco that it intended to surrender its leasehold interests in all of the areas of mutual interest created by an earlier agreement between Texaco and Exxon (including the Model Leases). As required by the terms of that agreement, Exxon offered to assign the leasehold interests it intended to surrender to Texaco. Texaco accepted the assignment of the leases in the Taylorsville Basin, including the aforementioned Exxon Leases. Subsequently, in May 1992 Shore and Texaco entered into an agreement whereby Texaco assigned to Shore an overriding royalty interest in its Taylorsville Basin leases (including the Exxon and Model Leases), and agreed to take over full lease maintenance responsibilities and obligations required by the Exxon Agreement.

### Forfeiture

Each of the leases discussed above was forfeited because the delay rentals were never paid.

## ANALYSIS

### Summary Judgment Standard

■ Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law.[5] All reasonable doubts and inferences must be decided in the light most favorable to the party opposing the motion.[6] Indeed, as long as there appears to be some evidentiary support for the disputed allegations, the motion must be denied.[7]

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.[8] Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case.[9] Once the moving party has satisfied its burden, the nonmoving party must go beyond the pleadings and—by its own affidavits or by depositions, answers to interrogatories, and admissions on file—set forth specific facts showing a genuine issue for trial.[10] Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[11]

### Genuine Issue of Fact

■■ Shore maintains that, pursuant to the Exxon Agreement, Exxon had a contractual duty to notify Shore in the event that delay rentals were not paid on the Model Leases. The Exxon Agreement provided:

In the event that Exxon, its successors or assigns should ever elect not to pay delay rental on leases in which Shore has an overriding royalty, Shore shall have the

**5.** Fed.R.Civ.P. 56(c) (1994).

**6.** *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir.1985).

**7.** See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coke v. Gen. Adjustment Bureau, Inc.* 640 F.2d 584, 595 (5th Cir.1981 (en banc)).

**8.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

**9.** *Id.* at 325, 106 S.Ct. at 2553–54.

**10.** *Id.* at 324, 106 S.Ct. at 2553–54; *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 256, 106 S.Ct. at 2514.

**11.** *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

**514**

right to make such payments and Exxon shall reassign its interest in such lease(s) to Shore. Exxon shall give Shore thirty days' advance notice of its intention not to make such delay rental payments before such rentals fall due.

In substance, pursuant to the Exxon Agreement, Exxon agreed to purchase Shore's currently owned leasehold interest in Caroline, Essex, Hanover, King William, Westmoreland, and King and Queen Counties, Virginia. However, Shore has offered no evidence that the Model Leases were among those leases currently owned by Shore at the time the Exxon agreement was entered into. The leases themselves are not part of the summary judgment record. Rather, Shore asks this Court to assume that Shore assigned the Model Leases to Exxon before the parties entered into the Exxon Agreement, making them subject to Exxon Agreement terms, including the notice provision. This the Court cannot do.

To the contrary, the Court must evaluate the evidence in a light most favorable to the nonmovant.[12] The partial summary judgment evidence indicates that Exxon may have acquired the Model Leases directly from the lessors, Broaddus, Andrews, and Barlow in 1988 and 1989, more than four years after the Exxon Agreement's execution. Whether this is true remains a disputed issue of fact. In the absence of evidence that the Model Leases were subject to the Exxon Agreement, the Court cannot find as a matter of law that Exxon was subject to a contractual duty to offer the Model Leases to Shore.[13] There being a genuine issue of material fact, this Court denies Plaintiff's partial summary judgment motion.

### CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is **DENIED**. It is so **ORDERED**.

---

**12.** *Thornbrough,* 760 F.2d at 640.

**13.** Texaco's liability for this failure is the subject of this Court's related opinion. In that opinion the Court concludes that Texaco is liable for the

forfeiture of the Exxon Leases by virtue of the Exxon Agreement which was expressly incorporated into the Texaco/Shore Agreement entered into in May 1992.