Lino MARTINEZ, Plaintiff-Appellee
Cross-Appellant,

v.

EL PASO COUNTY, Defendant-Appellant
Cross-Appellee.

No. 82–1327.

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1983.

---

Todd Chenoweth, George Rodriguez, Jr., El Paso, Tex., for defendant-appellant cross-appellee.

Thomas A. Spieczny, El Paso, Tex., for plaintiff-appellee cross-appellant.

Before GEE, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge:

Plaintiff brought this suit under Title VII, 42 U.S.C. § 2000e et seq., against his former employer, the County of El Paso, alleging discriminatory discharge from employment.[1] After receiving an adverse judgment on the merits, the County of El Paso decided to pursue an appeal based upon its contention that the court below applied incorrect legal standards to plaintiff's disparate treatment case. Plaintiff presents, as a point of cross-appeal, the argument that the trial court erred in refusing to honor the stipulation contained in the pretrial order concerning back pay. A thorough examination of the record convinces us that neither contention has merit. For this reason, we affirm the judgment reached below.

I

Plaintiff in this action, Lino Martinez, worked in the El Paso Juvenile Probation Department for more than two years. He began his employment in October of 1975 as a part-time employee but very soon became a full-time records clerk. Martinez was the only male employed in a clerical position. His job involved typing information cards for all juvenile offenders, typing reports of probation officers about juvenile offenders and preparing statistical sheets. In addition, Martinez routinely assisted the other secretaries when they needed help.

On January 1, 1978, Javier Banales was appointed to the position of Chief Juvenile Probation Officer. He immediately began to reorganize the department in which Martinez worked. He testified that, prior to beginning his new job, he had studied the department and decided upon a number of changes. First and foremost, he felt that it was essential that each secretary be able to perform all tasks of the department. Before this time, secretaries were assigned specific tasks, although they performed the other jobs when necessary.

Since the major function of this department was to complete typing assignments, Banales concluded that one way to improve the department was to upgrade the quality of typing. At the trial of this case, he testified that this led him to fire plaintiff on January 6th—only three working days after he had started his new job. Banales stated that plaintiff lacked "depth of secretary skills," which meant that he did not demonstrate "strong extensive typing skills." Record on Appeal, vol. 2 at 46. Banales admits that he fired Martinez because of a skills deficiency. The notice of termination, however, attributes the dismissal to the change in department structure which eliminated his position.

In response to defendant's justification for the termination, Martinez points out that the office receptionist, Margie Zubia, was retained despite the fact that her typing skills were inferior to plaintiff's, and she had served less than two months on the job. She was terminated two months later, but not because of weak typing skills. Instead, she was dismissed for excessive absenteeism. Defendant justifies the personnel decision to fire Martinez before Zubia by stating that (1) the county had no last hired-first fired policy; (2) he had not yet started the policy of rotating secretaries; and (3) the plaintiff's typing skills were inadequate for any job. Interestingly enough, plaintiff was never warned about the alleged deficiency in his typing skills. Neither were those skills ever tested by Banales nor anyone else in the department.

1. Martinez received a "Right to Sue Letter" from the United States Department of Justice on April 2, 1980.

## II

■ In a disparate treatment case, plaintiff carries the initial burden of proving a prima facie case of sex discrimination. Plaintiff must prove by a preponderance of the evidence that (i) he is a member of a protected class; (ii) he was qualified for the job from which he was discharged; (iii) he was discharged; and (iv) after the discharge, the employer filled the position with a woman, or a woman having comparable or lesser qualifications was retained. *Meyer v. Brown & Root Construction Co.,* 661 F.2d 369, 371 (5th Cir.1981); *Marks v. Prattco, Inc.,* 607 F.2d 1153, 1155 (5th Cir. 1979).

■ Since Title VII proscribes gender-based discrimination, plaintiff certainly satisfies the first element. The evidence discloses that he was qualified for the position of record clerk; consequently, the second element is met. Thirdly, plaintiff was clearly discharged from his job and finally, Martinez was discharged at a time when an inferior employee worked in the same department. She was retained until unexcused absences forced her termination several months later. The court below correctly concluded that plaintiff established a prima facie case of discrimination.

In order to rebut the presumption of discrimination created by the prima facie case, the defendant must "articulate some legitimate, nondiscriminatory reason" for the firing. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The reason articulated by Banales was that plaintiff lacked the necessary typing skills to perform the job.

■ Plaintiff now must prove by a preponderance of the evidence that the reason offered by defendant was not the actual reason for dismissal, but simply a pretext for discrimination. Plaintiff presented a variety of evidence designed to demonstrate the pretextual nature of defendant's proffered reason for the termination. First, plaintiff elicited testimony from Banales that he was a superior typist to Zubia. Furthermore, Banales admitted that Zubia had much less seniority, was less cooperative, and had less experience handling all the various jobs of the department than Martinez. Record on Appeal, vol. 2 at 123–24. Furthermore, the evidence demonstrates that Banales had little empirical evidence of plaintiff's bad typing. He did not give Martinez a typing test and did not consult with Martinez's supervisor about his abilities in this regard.[2]

The court below entered judgment for plaintiff after finding that

not only has Plaintiff proved that Defendant had little, if any, empirical evidence from which to conclude that Plaintiff's typing was inadequate, but he also proved that a retained employee had typing skills worse than those of Plaintiff. Under these circumstances, Plaintiff has shown that his sex "more likely" motivated the Defendant in discharging Plaintiff. [*Texas Department of Community Affairs v.*] *Burdine,* 450 U.S. [248] at 256, 101 S.Ct. [1089] at 1095 [67 L.Ed.2d 207]. He also has shown that his sex was a "determining factor" in his discharge.

Record on Appeal, vol. 1 at 22–23.

## III

Defendant took this appeal primarily to challenge the trial court's finding of pretext. The court, in defendant's estimation, made this finding only because it confused the plaintiff's duty to prove a causal link between discrimination and discharge with plaintiff's burden of persuasion. In this regard, defendant alleges error in the failure to require proof that an impermissible factor was the "but for" cause of the dismissal. This requirement allegedly is the only possible way to prove the intentional discrimination necessary to support a finding of pretext.

---

**2.** Defendant argues that the subjective evaluation of plaintiff is not important because all employees were evaluated in the same manner. This is patently ridiculous. The problem with subjective evaluations is not cured because the same standardless evaluation is applied across the board. Subjective evaluations are suspect because they provide a ready mechanism for discrimination. *Rowe v. General Motors Corp.,* 457 F.2d 348, 359 (5th Cir.1972).

Fortunately, the recent Supreme Court opinion in *United States Postal Service Board of Governors v. Aikens*, —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), speaks directly to this issue. After discussing the evidentiary burdens that order the presentation of the case, the Court points out that the ultimate question in a Title VII case is whether the defendant intentionally discriminated against the plaintiff. The Court then proceeds to discuss how that question is answered:

On the state of the record at the close of the evidence, the District Court in this case should have proceeded to this specific question directly, just as district courts decide disputed questions of fact in other civil litigation. As we stated in *Burdine:*

"The plaintiff retains the burden of persuasion. [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." 450 U.S., at 256, 101 S.Ct., at 1095.

In short, the district court must decide which party's explanation of the employer's motivation it believes.

All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult. The prohibitions against discrimination contained in the Civil Rights Act of 1964 reflect an important national policy. There will seldom be "eyewitnesses" testimony as to the employer's mental processes. But none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact. Nor should they make their inquiry even more difficult by applying legal rules which were devised to govern "the allocation of burdens and order of presentation of proof," *Burdine, supra,* at 252, 101 S.Ct., at 1093, in deciding this ultimate question. The law often obliges finders of fact to inquire into a person's state of mind. As Lord Justice Bowen said in treating this problem in an action for misrepresentation nearly a century ago:

"The state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much as fact as anything else." *Eddington v. Fitzmaurice,* 29 Chi.Div. 459, 483 (1885). 103 S.Ct. at 1482–83 (footnote omitted).

The foregoing excerpt clearly reveals the error in defendant's argument. The necessary showing of intentional discrimination can be made either by demonstrating (1) that a discriminatory motive more likely motivated the employer or (2) that the employer's explanation is unworthy of belief. The plaintiff did persuade the court below that his sex more likely motivated defendant to dismiss him. We leave that finding undisturbed. *Pullman Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

Defendant also maintains that the judgment below interferes with the permitted business decisions involved in a department reorganization. Defendant should be permitted to reorganize the department without being slapped with a sex discrimination judgment. The weakness in defendant's position is evident from the testimony of its own witness, Banales. He testified that the reorganization was needed so that every secretary would be able to adequately perform all necessary tasks. If this were the case, however, Banales would have fired the most incompetent, least cooperative secretary first. He failed to take this action. Instead, he fired the plaintiff. Defendant may certainly fire an employee whose typing is inadequate, but "only if this criterion is applied alike" to members of both sexes. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 804, 93 S.Ct. at 1825.

Defendant contends that the court improperly switched the burden of proof by requiring defendant to provide evidence of plaintiff's inadequate typing skills rather than requiring plaintiff to demonstrate the sufficiency of those skills. This is incorrect. The court simply noted that defendant articulated a reason for the termination which

plaintiff successfully showed to be unworthy of credence. This is the essence of proving pretext.

## IV

■ By way of cross-appeal, plaintiff challenges the award of $1,017.90 in back pay. In the pretrial order, the parties had stipulated that in the event plaintiff prevailed, the back pay award would be $2,035.80. This amount was reduced because the court concluded that even if plaintiff had been transferred to the receptionist post, he would have been terminated in three months when that position was eliminated.

> Although Plaintiff established a discriminatory discharge vis a vis the retention of Ms. Zubia, he did not attempt to show that he should have been retained in the reorganized secretarial unit. In order to make this showing, he would have had to prove that he was better qualified than each of the other secretaries including the woman hired to replace him.

Record on Appeal, vol. 1 at 23.

A remand would appear proper to permit plaintiff to remedy the error of his reliance on the pretrial order. Plaintiff has indicated, however, that he does not desire a remand. His challenge to the judge's action must, therefore, fail since he is certainly not entitled to an award of damages for which he can offer no justification.

For reasons set forth herein, the trial court judgment is affirmed.

AFFIRMED.