**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0759n.06**
**Filed: October 12, 2006**

**No. 05-6770**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NINA KESTNER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| THE STANTON GROUP, INC., | ) | MIDDLE DISTRICT OF TENNESSEE |
| LMBC EMPLOYMENT PARTNERS, LLC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: MERRITT, SUTTON and GRIFFIN, Circuit Judges.

PER CURIAM. After the Stanton Group discharged Nina Kestner, she filed this lawsuit alleging hostile-work-environment, sexual-discrimination and retaliation claims under Title VII and the Tennessee Human Rights Act. The district court granted summary judgment for the defendants. Because Kestner has not established a prima facie hostile-work-environment claim and because she has not shown that her employer's reasons for discharging her were pretextual as to her two other claims, we affirm.

I.

No. 05-6770
*Kestner v. Stanton Group, Inc.*

The Stanton Group is a small real estate management company that contracts with LMBC Employment Partners to provide human resource services. In 1995, Debra Viol, President of the Stanton Group, hired Nina Kestner as a senior property manager. Kestner's responsibilities included negotiating leases, ensuring tenant compliance with contracts and maintaining relationships with some clients. Before hiring Kestner, Debra Viol had performed these duties herself.

Starting in 2002, Debra Viol began to notice problems in Kestner's work performance. A bookkeeper under Kestner's supervision resigned because they did not get along, and another complained that Kestner mishandled her work. That summer a client complained that Kestner had miscalculated his bill, and in December the insurance on a property managed by Kestner lapsed for 17 days. In January 2003, the company asked Kestner to supervise the bookkeeping for a new client, Two Rivers, but she failed to balance the books properly. To remedy the problem, Debra Viol temporarily hired a certified public accountant to fix the errors, which the company eventually resolved in May.

After the Two Rivers incident, the company removed Kestner's authority to supervise the bookkeeping staff. Although she continued to work with them, neither bookkeeper got along with Kestner, and they complained that Kestner interfered with their work. Further elevating office tensions was the resignation of a receptionist in March, JA 161, for which Debra Viol blames Kestner and Kestner blames Louis Viol. Louis Viol, an investor in the Stanton Group and Debra's husband, began working as the Stanton Group's General Manager in 1994.

That June, Debra Viol invited Patsy Danley, a human resources specialist, to make suggestions about how to ease tensions in the office. Both bookkeepers complained to Danley about Kestner's behavior, and the new receptionist noted that there was tension between Kestner and the bookkeepers. No employee, including Kestner, complained about Louis Viol to Danley.

In July, Debra Viol developed new job descriptions for the office. Due to financial difficulties, Debra Viol reduced her salary and Louis Viol's salary by 25%. Consistent with changes over the prior months, the company diminished Kestner's job responsibilities and required her to report to Debra and Louis Viol. Kestner discussed these changes and other concerns with Debra Viol on August 5. At the meeting, Debra Viol suggested that Kestner talk to Danley about her problems with other employees.

Kestner met with Danley on August 18, 2003. She complained that Louis Viol was "harassing" her, JA 271, and that "every single day was a drudgery, a dreaded effort to go into work because [she] knew that [she] was going to have to deal with him," JA 273. Although Kestner mentioned that, in reference to a female tenant, Louis Viol had said, "[S]he needs a dick sandwich," JA 414, and that Louis Viol had "grabb[ed] [his] crotch," JA 273, her complaint focused on Louis Viol's "constant yelling," Kestner Dep. at 114, and "the constant abuse . . . the constant foul language and the constant in your face," JA 273.

The next day, Danley met with Debra and Louis Viol and noted that Kestner had complained about Louis yelling in the office. After the meeting, Louis Viol curtailed his intemperate behavior and reduced his contact with Kestner.

Debra Viol continued to receive complaints about Kestner for the next seven weeks. On September 30, Debra Viol discharged Kestner, assuming Kestner's duties herself. Debra Viol attributed the decision to Kestner's problems at work, the financial straits of the Stanton Group and the return of her administrative assistant from maternity leave.

After a timely filing with the EEOC and the appropriate Tennessee agency, Kestner filed this lawsuit against the Stanton Group and Employment Partners, alleging hostile-work-environment, sexual-discrimination and retaliation claims under Title VII and the Tennessee Human Rights Act. The Stanton Group moved for summary judgment on all claims, which the district court granted.

## II.

We review the district court's grant of summary judgment de novo. *Equal Employment Opportunity Comm'n v. Univ. of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990). And summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmovant, *id.*, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," FED. R. CIV. P. 56(c). Because the Tennessee Human Rights Act parallels Title VII, TENN. CODE ANN. § 4-21-101(a)(1); *Campbell v. Florida Steel Corp.*, 919

No. 05-6770
*Kestner v. Stanton Group, Inc.*

S.W.2d 26, 31 (Tenn. 1996); *see also Frizell v. Sw. Motor Freight*, 154 F.3d 641, 646–47 (6th Cir. 1998), our disposition of Kestner's Title VII claims resolves her state-law claims as well.

A.

Kestner first challenges the district court's rejection of her hostile-work-environment claim. To establish this claim, Kestner bore the burden of showing that "(1) she was a member of a protected class; (2) she was subject to unwelcome[] sexual harassment; (3) the harassment was based on her sex; . . . (4) the harassment created a hostile work environment;" and "(5) the supervisor's harassing actions were foreseeable or fell within his or her scope of employment, and the employer failed" to take "reasonable care to prevent and correct any sexually harassing behavior." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir. 1999) (emphasis omitted).

Kestner has failed to establish a triable issue of fact over the fourth element of the claim, namely that the conduct was "sufficiently severe or pervasive to alter the conditions of [Kestner's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation marks omitted). *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (observing that courts should consider "the frequency of the *discriminatory conduct*; *its* severity; whether *it* is physically threatening or humiliating, or a mere offensive utterance; and whether *it* unreasonably interferes with an employee's work performance") (emphases added).

Kestner worked at the Stanton Group for approximately eight years before her termination. Most of what she complains about over that period of time, however, is not actionable. It is well

settled that Title VII does not establish a "general civility code" for the workplace, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), and thus does not create a cause of action for intemperate behavior or general profanity. That Louis Viol yelled at employees, male and female, and that he cursed in front of employees, male and female, does not by itself create a hostile work environment. Indeed, though Kestner often complained about Louis Viol's behavior, she never suggested that it amounted to harassment until her August 2003 meeting with Danley, which occurred after she had been with the company for about eight years.

Some of Louis Viol's comments, it is true, go beyond the generally profane to epithets that can fairly be described as gender specific. But she has offered no evidence to show that these comments were pervasively made or that any of them were directed at her. While she heard Viol make one of the comments ("[S]he needs a dick sandwich"), she has not even shown that she heard another one ("[D]on't get your tit in a wringer"). The "sporadic use" of this "abusive language," along with occasional instances of other similar language, does not by itself create a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

Nor has Kestner shown that Louis Viol's conduct was particularly severe. His most physical act, the grabbing of his crotch, neither resulted in contact with Kestner nor suggested that such contact was forthcoming. *Cf. Harris*, 510 U.S. at 23 (observing that one factor is whether discriminatory conduct is "physically threatening"). Notably, not a single employee, including Kestner, complained of Louis Viol's conduct when Danley surveyed them in June 2003.

In the final analysis, Louis Viol's sporadic use of gender-specific epithets does not convert the remainder of his tacky behavior, including his frequent employment of obscenities and his inability to control his temper, into discriminatory conduct. The totality of the circumstances must be considered when determining if conduct is "because of . . . sex," *see Williams*, 187 F.3d at 563, and Louis Viol's abuse of both men and women suggests that much of his behavior, while inappropriate, was not discriminatory, *cf. Oncale*, 523 U.S. at 81–82 ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."). Given the scattered nature of Louis Viol's discriminatory comments over several years, no reasonable jury could find that his discriminatory conduct was "sufficiently severe or pervasive to alter the conditions of [Kestner's] employment." *Meritor Sav. Bank*, 477 U.S. at 67 (internal quotation marks omitted). The district court properly rejected this claim as a matter of law.

B.

Kestner next challenges the district court's disposition of her sex-discrimination claim. Because Kestner has not presented direct evidence of discrimination, we analyze her claim under the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, Kestner must first establish a prima facie case of discrimination, which requires her to show that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) "that for the

same or similar conduct [she] was treated differently than similarly-situated [non-protected] employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992).

If Kestner establishes a prima facie case, the burden shifts to the Stanton Group to offer a legitimate, nondiscriminatory reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56 (1981). And if the Stanton Group can offer at least one such reason, the burden of persuasion shifts back to Kestner to show that each proffered reason is merely a pretext for illegal discrimination. *Id.* at 253. Because a jury cannot reject an employer's proffered rationale "unless there is a sufficient basis in the evidence for doing so," *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994), Kestner must demonstrate "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate . . . discharge, or (3) that they were insufficient to motivate discharge." *Id.* at 1084 (internal quotation marks and emphases omitted).

As an initial matter, it is not clear that Kestner has established a prima facie case of discrimination. Her principal allegations—that Louis Viol received special treatment regarding his office attire, working hours and workplace demeanor—do not rise to the level of an adverse employment action. *Cf. Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999). And although her termination would undoubtedly constitute such an action, she did not appear to present that argument to the district court.

But even assuming she established a prima facie case, she has not established a triable issue of fact that the company's proffered reasons for discharging her were pretextual. The company offered two complementary reasons for the discharge: that it was having financial difficulties in 2003 and that Kestner was not meeting its expectations. Kestner cannot successfully attack these reasons as having "no basis in fact," *Manzer*, 29 F.3d at 1084, as long as the Stanton Group had an honest belief in its proffered reasons, "establish[ed] [by] its reasonable reliance on the particularized facts that were before it at the time the decision was made," *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Consistent with these requirements, the Stanton Group has offered several "particularized facts" that support its explanations for discharging Kestner. No one disputes that the Stanton Group reduced the salaries of Debra and Louis Viol by 25% in July 2003 due to financial difficulties, that an administrative assistant's return from maternity leave in September 2003 increased the Stanton Group's expenses, and that the company did not replace Kestner (but required Debra Viol to assume her duties). On top of this, Debra Viol grounded her assessment of Kestner's performance in several uncontested facts: customers and co-workers complained about Kestner throughout the year preceding her termination; insurance coverage lapsed for 17 days on a property managed by Kestner, leading Debra Viol to assume several of Kestner's administrative responsibilities; and Kestner's supervision of the Two Rivers account resulted in a bookkeeper quitting in frustration and the need for a certified public accountant to fix the problem over the next four months. Even if Debra Viol erred in attributing the resignation of a receptionist to Kestner, "the key inquiry is whether [the

Stanton Group] made a reasonably informed and considered decision" regarding the termination. *Smith*, 155 F.3d at 807; *see Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001) (affirming summary judgment despite disagreement over employee's performance because there existed "substantial evidence that [the employer] had a reasonable basis to be dissatisfied").

Kestner attempts to undermine the company's evidentiary support for its decision by suggesting that it is internally inconsistent, Br. at 34 (the Stanton Group claimed that "Kestner's position was eliminated for lack of work" even though the position is "tenured"), and not "empirical," Br. at 33 (the Stanton Group "never gave . . . Kestner an evaluation showing problems with her performance until August 5, 2003"). As to the first point, the fact remains that the Stanton Group has not hired a new Senior Property Manager since Kestner's departure, forcing Debra Viol to assume these duties. The phrase "lack of work" simply meant that the company did not have sufficient work to justify a property manager in addition to Debra Viol, which indeed the uncontested facts show to have been the case.

As to the second point, Kestner suggests that only an objective, written employee evaluation can prove that an employee's work performance is problematic. Neither of the cases upon which she relies—*Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424 (7th Cir. 1992), and *Martinez v. El Paso County*, 710 F.2d 1102 (5th Cir. 1983)—supports this proposition. In *Giacoletto*, the employer gave plaintiff a "suspiciously negative 1985 performance evaluation just six days before he was fired" without any explanation of why the plaintiff merited such an evaluation. 954 F.2d at 427. In

*Martinez*, a newly hired manager fired the plaintiff for poor typing skills without any factual basis

for his decision. 710 F.2d at 1104. Unlike these employers, the Stanton Group based its decision

to dismiss Kestner on a year of complaints from customers and co-workers along with Debra Viol's

personal observations of Kestner's declining work performance. This factual evidence is undeniably

"empirical" and certainly sufficient for Debra Viol to conclude that Kestner was a problematic

employee. That this small company used less formal means for evaluating and managing worker

performance does not alter its authority to dismiss underperforming employees. The district court

correctly rejected Kestner's sexual discrimination claim as a matter of law.

C.

A similar conclusion applies to Kestner's retaliation claim. To establish a cognizable claim

of retaliation, Kestner had the initial burden of showing "(1) that [she] engaged in an activity

protected by Title VII; (2) that the exercise of [her] civil rights was known by [the Stanton Group];

(3) that, thereafter," the Stanton Group retaliated against Kestner; and "(4) that there was a causal

connection between the protected activity" and the retaliation. *Wrenn v. Gould*, 808 F.2d 493, 500

(6th Cir. 1987); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414–15

(2006). In the event Kestner makes this showing, the Stanton Group had the burden of offering

legitimate, non-retaliatory reasons for its actions, which Kestner has the ultimate burden of

disproving through one of *Manzer*'s three grounds for pretext. *Manzer*, 29 F.3d at 1084. In this

instance, Kestner's retaliation claim fails for the same reason that her sexual discrimination claim

No. 05-6770
*Kestner v. Stanton Group, Inc.*

fails: She has not introduced evidence showing that the Stanton Group's proffered reasons for her

dismissal were pretextual.

III.

For these reasons, we affirm.